IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AERO TECH, INC.,

        Plaintiff,

        v.

No. 2:22-cv-00476-WJ-GJF

GREAT AMERICAN INSURANCE COMPANY d/b/a
GREAT AMERICAN INSURANCE GROUP AND
GREAT AMERICAN INSURANCE AGENCY, INC., and
GEORGE'S AIRCRAFT REPAIR, LLC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT GEORGE'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**THIS MATTER** is before the Court on Defendant George's Aircraft Repair, LLC's Motion to Dismiss for Lack of Personal Jurisdiction. Having reviewed the parties' submissions and the applicable law, the Court concludes that this Court's exercise of personal jurisdiction over George's Aircraft Repair, LLC ("George's") does not offend due process; accordingly, George's Motion (**Doc. 10**) is **DENIED**.

### BACKGROUND[1]

Aero Tech, Inc. ("Aero Tech") is an aviation company headquartered and with its principal place of business in Clovis, New Mexico. **Doc. 1 ("Complaint"), ¶ 1**. Among other services, Aero Tech performs aerial firefighting and agricultural services. *Id.* Aero Tech owns a 2001 aircraft manufactured by Air Tractor, Inc., model number AT-802A and Federal Aviation Registration

---

[1] The background facts are taken from the uncontroverted allegations in the Complaint and Plaintiff's affidavits, which the Court must accept as true at this stage in the litigation. Plaintiff submitted two affidavits: one by Aero Tech's president and owner, Ted Stallings ("Stalling Aff."), and one by Aero Tech's office manager, Nicole McMath ("McMath Aff."). Aero Tech also attached exhibits to each of these affidavits.

Number N802LA ("the Aircraft"). *Id.* ¶ 2. The Aircraft was insured by Defendant Great American Insurance Company ("Great American"). *Id.* ¶ 10. On November 23, 2019, the Aircraft's engine suffered damage, forcing the pilot to make an emergency desert landing in the country of Chile. *Id.* ¶¶ 12, 13. The pilot saved himself and the Aircraft, but the Aircraft's engine was destroyed. *Id.* ¶ 13. Aero Tech immediately filed an insurance claim with Great American for the physical damage to the Aircraft. *Id.* ¶ 14. Negotiations about how to rescue the Aircraft ensued.

Aero Tech wanted the Aircraft returned to Clovis, New Mexico, and articulated this desire to Great American. **Stalling Aff. ¶ 25; Ex. 3**. Contrary to Aero Tech's wishes—and without Aero Tech's involvement—Great American developed a different plan. *Id.* ¶ 31; **Ex. 5**. This plan involved George's disassembling the Aircraft in Chile and then shipping it to George's in Vernon, Texas, where it would be inspected and reassembled. **Complaint ¶¶ 7, 16, 17; Stalling Aff. ¶¶ 28, 29, 31**. Aero Tech resisted the recovery plan for several reasons: because Great American refused to return the Aircraft to New Mexico; because Great American failed to provide Aero Tech with details of the plan; and because Aero Tech was unsure who would pay for the recovery plan given Great American's continued reservation of rights. **Stalling Aff. ¶¶ 35, 36, 37**. On January 30, 2020, Great American finally provided Aero Tech with a detailed recovery plan in which Great American promised to pay the cost of recovering and transporting the Aircraft to George's. *Id.* ¶ 44; **Ex. 13**. Aero Tech agreed to the plan in large part out of fear that Great American would deny its insurance claim if it refused. *Id.* ¶ 46. On March 18, 2020, George's sent an invoice for the cost of retrieving the Aircraft to "Aero Tech, Inc. C/O Great American Insurance Group" at Aero Tech's address in Clovis, New Mexico. *Id.* ¶ 47; **Ex. 14**.

According to Aero Tech, it did not request George's services or want the Aircraft to be brought to George's in Texas. *Id.* ¶¶ 23, 26. Rather, Great American was the one who selected

and hired George's to travel to Chile, to disassemble the Aircraft, to pack it into containers for shipping to George's in Vernon, Texas, and then ultimately to reassemble the Aircraft. **Complaint ¶¶ 18, 20**. Aero Tech alleges Great American and George's entered into an oral or written contract for the disassembly, transport, and reassembly of the Aircraft. *Id.* **¶ 22.**

Although Aero Tech did not solicit George's services, Aero Tech and George's were not strangers and had done business with one another since 1997. **Stalling Aff. ¶ 64**. According to evidence brought forward by Aero Tech, between 1997 and 2021, George's engaged in many transactions with Aero Tech. *Id.* **¶¶ 11, 12, 13; Ex. 1.** Thus, Aero Tech alleges George's knew or should have known (1) the Aircraft was owned by Aero Tech; (2) the Aircraft disassembly, transport, and reassembly were for the benefit of Aero Tech; and (3) Aero Tech was a New Mexico company. **Complaint ¶ 21**; **Stalling Aff. ¶ 64**.

The Aircraft arrived at George's in June of 2020. **Complaint ¶ 27; Stalling Aff. ¶ 51**. On June 29, 2020, Great American informed Aero Tech that Great American had "succeeded in recovering the Aircraft to George's Aircraft in Texas [and would now] proceed with the inspection as was contemplated in prior correspondence." **Stalling Aff. ¶ 51; Ex. 18**. Soon after, Great American denied Aero Tech's insurance claim. **Complaint ¶ 28**. Aero Tech sued Great American.[2] *Id.* **¶ 29**. Throughout the litigation, the Aircraft remained disassembled at George's in Texas. *Id.* **¶ 36, 39, 48.**

In 2021, George's sent Aero Tech four invoices for various parts and services for the Aircraft. **McMath Aff. Ex. A**. Aero Tech paid each invoice. **McMath Aff. ¶ 2**. On each invoice, George's included the address for Aero Tech's headquarters in Clovis, New Mexico.

---

[2] The suit was originally filed in New Mexico state court but was subsequently removed to federal court. The federal case number for the initial action is 2:20-cv-01311-JB-GJF.

On October 14, 2021, Great American and Aero Tech entered into a Settlement Agreement under New Mexico law in which Great American agreed to pay Aero Tech a sum of money and "to have the Aircraft reassembled at its expense by George's . . . as set forth in the correspondence dated January 30, 2020, which shall be considered a material term of this Settlement Agreement." **Complaint ¶¶ 32, 33, 35; Stalling Aff. Ex 2**.

Nearly six months after the execution of the Settlement Agreement, the Aircraft was still disassembled at George's in Texas. **Complaint ¶¶ 36, 41.** Then, on May 5, 2022, a tornado hit George's, and the Aircraft was substantially damaged. *Id.* **¶¶ 40, 41, 42.** Aero Tech filed suit in this Court—this time against Great American and George's. Aero Tech brought a breach of contract claim against Great American for failing to have the Aircraft timely reassembled as required by the Settlement Agreement. Aero Tech also brought three claims against George's: a third-party beneficiary breach of contract claim; a promissory estoppel claim; and a claim for unjust enrichment.

In lieu of filing an Answer, George's filed the instant motion to dismiss for lack of personal jurisdiction. In its motion, George's moved to dismiss Aero Tech's claims against it without prejudice on the grounds that this Court may not assert personal jurisdiction over George's because George's lacks minimum contacts in New Mexico. Aero Tech opposes this motion and filed a Response. Both parties attached affidavits to their briefing. After reviewing the briefing and affidavits as well as the applicable law, the Court concludes Aero Tech has made a prima facie showing of George's minimum contacts in New Mexico. Moreover, the Court concludes that asserting personal jurisdiction over George's in New Mexico complies with the Due Process Clause of the Fourteenth Amendment.

**DISCUSSION**

A motion to dismiss is an appropriate procedural vehicle for resolving personal jurisdiction issues. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *AST Sports Sci. Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). However, when a pre-trial motion to dismiss is considered by the court without an evidentiary hearing, the plaintiff "need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* at 1057. At this early stage in the litigation, the plaintiff's burden is "light." *Id.* at 1056.

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citation omitted). Plaintiff may also submit affidavits and declarations "that if true would support jurisdiction over the defendant." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (citation omitted). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Intercon, Inc.*, 205 F.3d at 1247 (citation omitted).

To show personal jurisdiction over a nonresident in a diversity action, Aero Tech must show that personal jurisdiction is proper under the laws of the forum state—here, the laws of New Mexico—and that the exercise of personal jurisdiction over George's complies with the Due Process Clause of the Fourteenth Amendment. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). New Mexico's long-arm statute enumerates certain acts that can subject a defendant to personal jurisdiction in New Mexico. NMSA 1978, § 38-1-16(A). Among these enumerated acts is "the transaction of any business within this state" and "the

contracting to insure any person, property or risk located within this state at the time of contracting." *Id.* § 38-1-16(A)(1), (4). The New Mexico Supreme Court has held the State's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible"; thus, the jurisdictional analysis collapses into a single due-process inquiry. *Tercero v. Roman Cath. Diocese of Norwich, Connecticut*, 2002-NMSC-018, ¶ 6, 48 P.3d 50, 54.

The Due Process Clause authorizes personal jurisdiction where (1) a defendant has established minimum contacts within the forum state, and (2) where the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Dental Dynamics, LLC*, 946 F.3d at 1229. A plaintiff satisfies the "minimum contacts" standard by showing the court may properly exercise either general or specific jurisdiction over the non-resident defendant. Aero Tech does not argue general jurisdiction; therefore, the Court need only address specific jurisdiction. Specific jurisdiction is proper if (1) the out-of-state defendant "purposefully directed" its activities at a resident of the forum, and (2) the litigation results from plaintiff's alleged injuries that "arise out of or relate to" the defendant's activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted).

To show George's directed its activities at New Mexico, Aero Tech must point to "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The guiding principle behind the minimum contacts' analysis is that "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1078 (10th Cir. 2004) (citation omitted). A defendant may not be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475 (citation omitted). However, the Supreme Court has emphasized:

6

"where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities." *Id.* at 473-74 (citation omitted).

For minimum contacts analysis, even minor contacts with a state, when aggregated, have been found to be sufficient. *Benton*, 375 F.3d at 1078. And, although personal jurisdiction is assessed individually, personal jurisdiction may be found over a defendant who is a "primary participant[] in an alleged wrongdoing" intentionally directed at the forum state by a different defendant. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Burger King Corp*, 471 U.S. at 479 n.22. A defendant's direct communication with a forum-state resident can provide "some evidence" of purposeful direction. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017) (citation omitted). Further, the Supreme Court and Tenth Circuit have found it relevant whether the defendant entered into a contractual relationship with the plaintiff with knowledge that the plaintiff was based in the forum state. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 480 (finding minimum contacts in part because of "substantial record evidence indicating that [defendant] most certainly knew that he was affiliating himself with an enterprise based primarily in [the forum state]"); *Benton*, 375 F.3d at 1078 (finding minimum contacts in part because defendant "voluntarily conducted business with [plaintiff], whom [defendant] knew to be located in [the forum state] for many years prior to and at the time of the events at issue").

If a defendant has "no meaningful contacts" in New Mexico, the Court may not assert personal jurisdiction. *Burger King Corp.*, 471 U.S. at 472. However, if minimum contacts are found, the Court must still assess whether asserting personal jurisdiction over George's would be unreasonable such that it would offend "traditional notions of fair play and substantial justice." *Benton*, 375 F.3d at 1078 (citation omitted). The defendant bears the burden of presenting "a

7

compelling case" that personal jurisdiction would be unreasonable. *Old Republic Ins. Co.*, 877 F.3d at 909 (citation omitted). Unreasonableness is determined by weighing five factors: "(1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* (citation omitted). While these factors may be used to defeat jurisdiction, an "especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts." *Benton*, 375 F.3d at 1079 (citation and brackets omitted); *see also Burger King Corp.*, 471 U.S. at 477.

I. **George's Has Minimum Contacts in New Mexico.**

The Court's first task is to determine whether Aero Tech's allegations, supported by affidavits, make a prima facie showing of minimum contacts necessary to establish jurisdiction over George's in New Mexico. George's contends that its dealings with Aero Tech do not provide a sufficient basis for New Mexico to exercise specific jurisdiction over George's. According to George's, it is a limited liability corporation located, incorporated, and with its principal place of business in Vernon, Texas. **Donald Aydelott Aff. ¶ 3**. George's contends minimum contacts do not exist in New Mexico because (1) Aero Tech initiated, approached, and contacted George's in Texas to seek George's services related to the damaged Aircraft; and (2) the work on the Aircraft was to be performed in Vernon, Texas, except for the retrieval of the plane in Chile. *Id.* ¶¶ **19-22**. George's further asserts that all personal interactions between Aero Tech and George's took place in Vernon, Texas. *Id.* ¶ **22**. According to George's, the only time George's conducted business in New Mexico was over ten years ago when it retrieved an aircraft from New Mexico. *Id.* ¶ **4**.

Aero Tech's affidavits tell a very different story, and, at this early stage, the Court is required to accept the truth of the facts contained in Plaintiff's affidavits and resolve all factual disputes in Aero Tech's favor. Fundamental to Aero Tech's version of the story is the fact that Great American—Aero Tech's insurer—forced George's out-of-state services on Aero Tech, a New Mexico company. According to Aero Tech, Aero Tech wanted the Aircraft returned to Clovis, New Mexico, and articulated this desire to Great American. Contrary to George's explicit wishes, Great American selected and hired George's to travel to Chile, disassemble the Aircraft, pack it into containers for shipping to George's in Vernon, Texas, where it would be inspected and reassembled. Thus, according to Aero Tech, Great American contracted with George's to service the Aircraft for its insured, Aero Tech.

Based on the Complaint and Aero Tech's affidavits, it appears George's knew it was doing work for Aero Tech and knew that Aero Tech was a New Mexico company. To support this contention, Aero Tech submitted affidavit evidence that George's sent an invoice on March 18, 2020, to "Aero Tech, Inc. C/O Great American Insurance Group" at Aero Tech's address in Clovis, New Mexico. **Stalling Aff. ¶ 47; Ex. 14.** Aero Tech also submitted evidence that, between 1997 and 2021, George's had engaged in many transactions with Aero Tech. *Id.* **¶¶ 11, 12, 13; Ex. 1**. Finally, in 2021—after Great American denied coverage—George's sent four invoices to Aero Tech that specifically listed Aero Tech's address in Clovis, New Mexico. **Stalling Aff. Ex. 14; McMath Aff. Ex. A**. Aero Tech paid each of these invoices.

Accepting the truth of the facts contained in Aero Tech's affidavits and resolving all factual disputes in its favor, Aero Tech has made a prima facie showing of George's minimum contacts in New Mexico such that George's should have reasonably anticipated being haled into New Mexico court if it failed to reassemble the Aircraft. Minimum contacts exist for several reasons:

9

First, contrary to George's contentions, Aero Tech did not reach out to or initiate a business transaction with George's in Texas. Rather, Great American—as Aero Tech's insurer— selected and hired George's, and it was George's who directly communicated with Aero Tech in New Mexico by sending an invoice for the recovery services, in March of 2020, and then by sending four more invoices in 2021. These invoices represent "some evidence" that George's purposefully directed activities at Aero Tech in New Mexico. *Old Republic Ins. Co.*, 877 F.3d at 905. Furthermore, the fact that Aero Tech paid the invoices tends to support the reasonable inference that George's "purposefully derive[d] benefit" from its interstate activities with Aero Tech, a New Mexico company. *Burger King Corp.*, 471 U.S. at 473.

Next, George's knowledge that it was conducting services for a New Mexico based company supports minimum contacts in New Mexico. Like the plaintiff in *Burger King Corporation v. Rudzewicz*, Aero Tech presented "substantial record evidence indicating that [George's] most certainly knew that [it] was affiliating [itself] with an enterprise based [in New Mexico]." 471 U.S. at 480. And, like the defendant in *Benton v. Cameco Corporation*, George's "voluntarily conducted business with [Aero Tech], whom [George's] knew to be located in [New Mexico] for many years prior to and at the time of the events at issue." 375 F.3d at 1078. To support George's knowledge of Aero Tech's location in New Mexico, Aero Tech produced numerous invoices from George's that were specifically addressed to Aero Tech in Clovis, New Mexico, as well as record of many business transactions between Aero Tech and George's since 1997. Although, Aero Tech's claims do not arise out of these past business transactions, the past transactions support the conclusion that George's knowingly transacted business with a New Mexico company when it sent invoices related to the present dispute.

Finally, minimum contacts exist in New Mexico because George's was a "primary participant" in the alleged wrongdoing intentionally directed at New Mexico. *Calder*, 465 U.S. at 790. In other words, George's was a primary participant in the failure to repair, reassemble, and return the Aircraft to Aero Tech in New Mexico, as promised prior to and in the New Mexico Settlement agreement between Great American and Aero Tech. The Court notes that whether George's was a primary participant is distinct from the agency issue Aero Tech raises.[3]

While none of the individual contacts would be enough to establish minimum contacts alone, in the aggregate these contacts are sufficient. Aero Tech has carried its light burden and made a prima facie showing of minimum contacts, and the assertion of specific jurisdiction is proper because Aero Tech's claims against George's each arise of the above-discussed contacts.

## II. Asserting Personal Jurisdiction over George's Is not Unreasonable.

In close cases, like this one, the Court's assessment of whether asserting personal jurisdiction over the defendant would be unreasonable may defeat personal jurisdiction or tip the balance in its favor. *Burger King Corp.*, 471 U.S. at 477 ("These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."). Recall, unreasonableness is determined by weighing five factors: "(1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's

---

[3] Because the Court finds minimum contacts exist for the reasons discussed above, the Court need not address Aero Tech's alternative argument that Great American is George's agent and that Great American's actions establish minimum contacts for George's in New Mexico. Because the Court declines to address the agency issue, the Court need not consider the response Great American filed to Aero Tech's response to George's motion to dismiss (**Doc. 24**) nor does the Court need to consider the letters sent by Aero Tech and Great American regarding whether the Court should consider Great American's response and whether the Court should grant Aero Tech leave to file a reply (**Docs. 26, 28**). The Court notes that its finding that George's was a primary participant in the alleged wrongdoing should not be conflated with a holding on the existence or non-existence of an agency relationship between Great American and George's.

interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Old Republic Ins. Co.*, 877 F.3d at 909 (citation omitted). Here, asserting personal jurisdiction over George's is neither unreasonable nor does it offend traditional notions of fairness and substantial justice.

### A.      The Burden on George's is Light.

The burden on the defendant "is of special significance" because "it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998). George's contends it would be substantially burdened if forced to litigate this action in New Mexico because George's witnesses and evidence are in Texas and George's is not a "national company with infinite resources." **Doc. 11 at 10.** In response, Aero Tech points out that George's failed to identify witnesses and evidence located in Texas, and that if George's is referring to the Aircraft, the only reason it remains in Texas is because Great American and George's have continued to refuse to reassemble and return it to New Mexico as required to mitigate damages in this case. Aero Tech also argues it too is not a national company with infinite resources.

The Court agrees with Aero Tech that requiring George's to litigate in New Mexico would not be a substantial burden. George's is a limited liability corporation located in Vernon, Texas. The Court notes that Texas is a border state to New Mexico. Accordingly, requiring George's to litigate in a neighboring state would not be "so gravely difficult and inconvenient" that George's would be at a "severe disadvantage" in comparison to Aero Tech. *Burger King Corp.*, 471 U.S. at 478. Moreover, "modern transportation and communications have made it much less burdensome for a party sued to defend [itself] in a State where [it] engages in economic activity." *AST Sports Sci., Inc.*, 514 F.3d at 1061 (citation omitted). This is especially true in this case where George's

12

hales from Texas, a state right-next-door to New Mexico. This factor weighs in favor of the reasonableness of personal jurisdiction in New Mexico.

**B.       New Mexico Has an Important Interest in Resolving the Dispute.**

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc.*, 149 F.3d at 1096. This factor weighs in favor of jurisdiction because New Mexico has an important interest in providing Aero Tech with a forum to fully resolve its dispute with George's and Great American regarding the failure to repair and reassemble the Aircraft. New Mexico has made clear its interest in providing a forum for New Mexicans to bring claims against insurance companies who contract to insure a person, property, or risk located in the State. *See* NMSA 1978, § 38-1-16(A)(4). Relevant to this interest is the fact that, according to Aero Tech, Great American forced Aero Tech—its insured—to use George's and to have its Aircraft transported to Vernon, Texas, rather than Clovis, New Mexico. Had Aero Tech had its choice, the Aircraft would have been recovered to New Mexico and repaired at home in Clovis, and there would be no question that New Mexico had personal jurisdiction. This factor favors New Mexico as the forum.

**C.       Aero Tech's Interest in Receiving Convenient and Effective Relief Favors New Mexico as the Forum.**

This "inquiry hinges on whether the Plaintiff may receive convenient and effective relief in another forum." *OMI Holdings, Inc.*, 149 F.3d at 1097. Plaintiff provided only a cursory argument as to this factor, and George's provided none. Nevertheless, the Court finds this factor weighs in favor of jurisdiction in New Mexico. Although it appears Texas would also be an appropriate forum for Aero Tech to have brought its claims against George's, the Court is disinclined to split up Aero Tech's claims against George's and Great American to have one litigated in New Mexico and one litigated in Texas. Already the parties' disagreement over the

issue of agency has highlighted the risk inherent in splitting up this litigation. Because of the factually intertwined nature of the claims against George's and Great American, the Court cannot say with any certainty that Aero Tech could "receive convenient and effective relief in another forum." *Id.* And the Court agrees with Aero Tech that were the Court to transfer the entire case to Texas, as George's suggests, Great American might raise personal jurisdiction questions of its own once in Texas.[4] Thus, this factor favors New Mexico as the forum.

### D. The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies Favors New Mexico as the Forum.

For this factor, the Court examines "whether the forum state is the most efficient place to litigate the dispute." *AST Sports Sci., Inc.*, 514 F.3d at 1062 (citation omitted). To determine this, the Court must consider the "location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* (citation omitted). It appears that George's witnesses are in Texas and Aero Tech's witnesses are in New Mexico. The parties do not argue where the wrong underlying the lawsuit occurred nor do they argue which forum's substantive law would govern Aero Tech's claims against George's. However, Aero Tech does argue that asserting personal jurisdiction over George's would avoid piecemeal litigation. According to Aero Tech, it is undisputed that Great American is subject to the jurisdiction of New Mexico. And since Aero Tech will continue to litigate its claims against Great American in New Mexico, Aero Tech maintains that keeping George's in New Mexico too would be the "most efficient" way to litigate both disputes. The Court agrees and finds this factor favors New Mexico as the forum.

---

[4] The Court acknowledges that Great American filed a letter on January 17, 2023 (**Doc. 42**) notifying Magistrate Judge Fouratt that Great American would agree to waive any defenses to jurisdiction or venue if the Court were to transfer this action to Texas federal court or dismiss Aero Tech's claims without prejudice for refiling in Texas. While the Court notes that this is currently Great American's position, it does not change the Court's ruling on this motion.

E.  **The Shared Interest of the Several States in Fundamental Social Policies Weighs in Neither Party's Favor.**

For this final factor, the Court "focuses on whether the exercise of personal jurisdiction by [New Mexico] affects the substantive social policy interests of other states or foreign nations." *AST Sports Sci., Inc.*, 514 F.3d at 1062. George's makes a conclusory argument that "New Mexico does not have a social policy interest in the resolution of this case." **Doc. 11 at 10**. However, George's fails to make any argument as to whether New Mexico's assertion of personal jurisdiction would affect the substantive social policy interests of another state, for example Texas. Given the lack of argument, the Court concludes this factor weighs in neither party's favor.

In sum, George's failed to carry its burden and present a "compelling case" that the exercise of jurisdiction by this Court would be unreasonable. *Burger King*, 471 U.S. at 477. The factors soundly weigh in favor of asserting personal jurisdiction and in fact "fortify a borderline showing of minimum contacts." *Benton*, 375 F.3d at 1079 (citation and brackets omitted).

## CONCLUSION

The Court finds that asserting personal jurisdiction over George's is proper. Aero Tech has carried its burden and made a prima facie showing of George's minimum contacts in New Mexico, and the Court is satisfied that asserting personal jurisdiction over George's is reasonable and comports with Due Process. George's Motion to Dismiss (**Doc. 10**) is **DENIED**.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE