UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

AERO TECH, INC.,

      Plaintiff,

v.                                                                                               Civ. No. 22-476 WJ/GJF

GREAT AMERICAN INSURANCE
COMPANY and GEORGE'S AIRCRAFT
REPAIR,

      Defendants.

## ORDER AFFIRMING NONDISCLOSURE OF PRIVILEGED EMAILS

THIS MATTER is before the Court on Plaintiff's request that the Court (1) "perform[ ] an in-camera review" of certain emails between Defendants to "determine whether [Defendants'] privilege claims . . . are valid and appropriate" and (2) conclude that "no claim of privilege can be asserted for [the withheld] emails." ECF 74 (Plaintiff's letter) at 1–2.[1] In light of this request, the Court held a hearing on April 26, 2023, to discuss "whether the[ ] withheld documents are protected under an attorney-client privilege based on a claimed common interest." ECF 80 at 1 (quotation omitted). The Court also conducted an *in camera* review of the withheld emails. As explained below, the Court concludes that New Mexico's attorney-client privilege rules protect these emails from disclosure.

---

[1] *See also* ECF 76 (Great American's letter in response); ECF 80 (clerk's minutes) at 2 (noting that "[t]he parties confirmed that they were satisfied with how this issue has been presented to the Court (i.e., through counsels' letters, ECFs 74, 76) and that formal briefing on this issue was unnecessary"). Because Plaintiff's letter was filed the evening before the hearing on this issue, George's did not have sufficient time to submit a letter in response. George's, however, maintains the same fundamental position as Great American—that the withheld documents are protected under New Mexico's attorney-client privilege rules. *See* ECFs 80 at 1–2; 76 at 1–4.

## I. PARTIES' PRIMARY ARGUMENTS

### A. Plaintiff's Contentions

Plaintiff "challenge[s] . . . the privilege claims raised [by Defendants]" with respect to forty-one pages of documents: pages 88–97 and 104–134 (PRIVLOG). ECF 74 at 1. These documents consist of emails between counsel for Great American and counsel for George's from September 2022 to December 2022. *See* Defendants' April 24, 2023, Joint Privilege Log [ECF 74 at 3–9] at 5–8. Plaintiff represents that the "descriptions of the documents claimed to be privileged . . . . are now sufficient." ECF 74 at 1.

"[Plaintiff], however, maintains its challenge to the privilege claims"—contending that "Defendants' interests were not aligned and, therefore, no claim of privilege can be asserted for those emails." *Id.* Plaintiff specifically argues that Defendants could not have "shared an identical legal interest in the subject matter of each communication," *Albuquerque J. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 2019-NMCA-012, ¶ 19, 436 P.3d 1, 9, because the withheld emails concerned (1) "Aero Tech's agency argument"—an "undecided issue" showing Defendants "have potential claims against the other"; (2) "George's motion to dismiss" when "Great American was not [moving to be dismissed]"; and (3) "George's previous motion to stay" when "Great American did not [move to stay]." ECF 74 at 1–2.

### B. Defendants' Contentions

For their part, Defendants contend that they "were/are completely aligned with regard to the issues discussed in the subject communications." ECF 76 at 1–4. Defendants specifically argue that they shared "an identical interest as to the substance of [the withheld] emails" because Defendants had (1) "tak[en] the identical position [in connection with George's motion to dismiss, *see* ECFs 24, 25] that there was not at any time an agency relationship between them" and (2)

2

"both agreed that to the extent discovery was to be stayed against George's ['pending determination of George's motion to dismiss'], it also should be stayed as against Great American." *Id.* at 1–3 (also representing that the withheld emails "comprised . . . [these] two issues").

Defendants further assert that they are "aligned in their contention that [Plaintiff] is at fault for the delayed reassembly and repair of the Aircraft . . . . and with regard to [Plaintiff's] damages claim." *Id.* at 3. Indeed, they assert that they are "almost entirely aligned with respect to the defense of this action." *Id.* at 2–4.[2] Furthermore, Defendants maintain that New Mexico's "common interest privilege" does not require them to have complete unanimity on all issue in order to confidentially "work together on mutually beneficial issues." *Id.* at 2–4. Instead, Defendants argue that this privilege requires only a "shared . . . identical legal interest *in the subject matter of each communication*." *Id.* at 1–4 (emphasis added) (quoting *Albuquerque J.*, 2019-NMCA-012 at ¶ 19).[3]

## II. APPLICABLE LEGAL STANDARDS

In diversity cases, state law governs claims of privilege. *See* Fed. R. Evid. 501; *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998) (observing that "Rule

---

[2] Defendants acknowledge that "there admittedly are limited potential sources of contention between [them]." ECF 76 at 4. For instance, "Great American also has an argument that even if [Plaintiff] is not at fault for delaying the limited reassembly [of the Aircraft], then the delay was caused by George's, over whom Great American had no control." *Id.* at 2.

[3] Defendants correctly observe that Plaintiff's letter only "argues that the first element [of the common interest privilege] is missing." ECF 76 at 2; *accord* ECF 74 at 1–2 (arguing only that Defendants failed to meet this first element—i.e., that Defendants failed to "share[ ] an identical legal interest in the subject matter of [their] communications" (quoting *Albuquerque J.*, 2019-NMCA-012 at ¶ 19)). Defendants nevertheless "note[ ] that the other [two] elements of the common interest privilege are present" because "[1] [Defendants'] communications arose 'during the course of a joint defense effort between' [them], and [2] the shared legal interest was 'reflected by a preexisting, or at the very least contemporaneous, agreement of the parties,' as is evidenced by the express reference to a 'jointly privileged communication' in the subject of email correspondence between [Defendants' counsel] as early as September 1, 2022." *Id.* at 3 (quoting *Albuquerque J.*, 2019-NMCA-012 at ¶ 19).

501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases").

New Mexico's civil procedure rules "provide[ ] that '[p]arties may obtain discovery of any information, *not privileged*, which is relevant to the subject matter involved in the pending action.' Privileged information, then, is not discoverable." *Albuquerque J.*, 2019-NMCA-012 at ¶ 16 (emphasis in original) (quoting NMRA 1-026(B)(1)).  "To establish the applicability of the attorney-client privilege," the party asserting the privilege "[bears] the burden of proving all elements of the privilege as to each communication claimed to be privileged." *Id.* at ¶ 19. "In New Mexico, the basic elements of the attorney-client privilege are (1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client." *Id.* (quotation omitted). "The third element—'between privileged persons'—may be established by," *inter alia*, "demonstrating that the communication occurred 'between [a] the client or client's lawyer and [b] another lawyer representing another in a matter of *common interest*.'" *Id.* (emphasis added) (quoting NMRA 11-503(B)(3)).

This "common interest doctrine" permits a party to "claim privilege as to particular communications" between lawyers representing different clients—provided that the party satisfies "the additional burden of establishing, at a minimum, a factual basis allowing the district court to find that: (1) the parties to the communication shared an identical legal interest in the subject matter of each communication claimed to be privileged; (2) the communication was made during the course of a joint defense effort between the resisting party and the third party and in furtherance of that effort; and (3) the shared identical legal interest existed at the time the communication was

4

made as reflected by a preexisting, or at the very least contemporaneous, agreement of the parties." *Id.* (quotations omitted).[4]

The Tenth Circuit "review[s] the district court's determinations regarding waiver of attorney-client privilege . . . for abuse of discretion." *Harte v. Bd. of Comm'rs of the Cnty. of Johnson*, 940 F.3d 498, 522 (10th Cir. 2019) (quotation omitted). "Under this deferential standard of review, [the Tenth Circuit] won't disturb the district court's ruling unless it was arbitrary, capricious, whimsical, or manifestly unreasonable." *Pueblo of Jemez v. United States*, 63 F.4th 881, 889 (2023) (quotation omitted) (observing that "an error of law per se constitutes an abuse of discretion"). In other words, "under the abuse-of-discretion standard [the Tenth Circuit] defer[s] to the district court's judgment so long as it falls within the realm of . . . rationally available choices." *Id.* (quotation omitted).

## III. DISCUSSION

### A. Withheld Emails Do Not Contain Useful Discovery Information

As a preliminary matter, upon reviewing the forty-one pages of withheld emails, the Court can confirm Defendants' representation that these emails "do not contain significant revelations." ECF 80 at 2. For instance, the redacted portions of PRIVLOG documents 88–97 amount to six sentences that Defendants' counsel emailed to each other between September 22–26, 2022.[5] As for the other thirty-one pages of documents that Defendants entirely withheld from disclosure

---

[4] "[M]ere 'indicia' of joint strategy" or "a shared desire to see the same outcome" are "insufficient to demonstrate that a common interest agreement has been formed . . . . [or] to bring a communication between two parties within the common interest doctrine." *Albuquerque J.*, 2019-NMCA-012 at ¶ 19 (quotations and bracket omitted). Nevertheless, "a written agreement is not a prerequisite for invoking the common interest doctrine"—because (1) "a common interest agreement can be *inferred* where two parties are *clearly collaborating*" and (2) parties can "establish [without a written agreement] that they agreed to engage in a joint effort and to keep the shared information confidential." *Id.* (emphasis added) (quotations omitted). The question, therefore, is not whether a *written* common interest agreement existed—but rather whether the party asserting the privilege made "some showing that the parties, indeed, came to an agreement embodying a cooperative and common enterprise towards an identical legal strategy." *Id.* (quotation omitted).

[5] Defendants disclosed documents 88–97 to Plaintiffs, albeit in this redacted form.

(documents 104–134), approximately sixteen pages contain non-privileged emails exchanged with Plaintiff's counsel—emails that Plaintiff presumably already has in its possession.[6]

Of the remaining fifteen pages, four pages (documents 104, 112, 108, and 130) are complete repeats of emails already included in other documents (documents 107, 118, 132–33). The final eleven pages of these withheld documents contain brief email exchanges (with accompanying attachments) between Defendants' counsel on three dates: October 24–25 (documents 105–07, 117–18), November 15–16 (documents 126–27, 131–33), and December 7, 2022 (document 134). Although these emails do not seem to contain particularly helpful discovery information, the parties have represented that "the resolution of this discovery dispute is nevertheless important—particularly as it will help the parties as they move forward with discovery." ECF 80 at 2. Consequently, the Court issues this decision not only to resolve the instant dispute but also to provide guidance to navigate and forestall future disputes.

**B. Defendants Shared an Identical Legal Interest in Subject Matter of Each Email**

With regard to the withheld emails, Plaintiff does not challenge three of the four "basic elements of the attorney-client privilege." *Albuquerque J.*, 2019-NMCA-012 at ¶ 19. Specifically, Plaintiff does not challenge that the withheld emails contained "[1] communication[s] [2] made in confidence . . . [3] for the purpose of facilitating the attorney's rendition of professional legal services to the client"—and the Court agrees. *Id.*; *see* ECF 74. Plaintiff's fundamental contention is that these confidential emails were not made "between privileged persons"—e.g., between lawyers representing their respective clients "in a matter of common interest.'" *Albuquerque J.*, 2019-NMCA-012 at ¶ 19. As to this assertion, the Court disagrees, holding that Defendants indeed "shared an identical legal interest in the subject matter of [their withheld emails]." *Id.*

---

[6] These non-privileged emails that were sent to Plaintiff's counsel are found at PRIVLOG documents 108 (bottom half) through 111, 113–16, 119–22, 123 (bottom half) through 125, and 127 (bottom half) through 129.

For instance, the six redacted sentences in the September 22–26 emails (documents 88–97) and the eleven pages of withheld emails and attachments from October 24–25, November 15–16, and December 7, 2022 (documents 105–07, 117–18, 126–27, 131–33, 134) deal exclusively with either the agency issue or the motion-to-stay issue, both of which arose in connection with the motion-to-dismiss briefing.  Furthermore, the Court finds that Defendants "shared an identical legal interest" in these issues—as both Defendants sought to advance the legal positions that (1) "there was not at any time an agency relationship between them" and (2) "to the extent discovery was to be stayed against George's ['pending determination of George's motion to dismiss'], it also should be stayed as against Great American."  ECF 76 at 1–3.

The Court further holds that New Mexico privilege law does not require Defendants to be perfectly aligned on *every* conceivable issue to communicate with each other (under the protection of the common interest doctrine) about *any* issue.  Indeed, New Mexico only requires that "the parties to the communication shared an identical legal interest in *the subject matter of each communication claimed to be privileged*." *Albuquerque J.*, 2019-NMCA-012 at ¶ 19 (emphasis added).  Although Plaintiff did not meaningfully contest the other two elements of the common interest doctrine, the Court nevertheless finds that the emails were "[1] made during the course of a joint defense effort between [them] and in furtherance of that effort; and [2] the shared identical legal interest existed at the time the communication was made as reflected by a preexisting, or at the very least contemporaneous, agreement of the parties."  *Id.*  Admittedly, Defendants did not have (at least at the time of the hearing) a *written* agreement memorializing their "shared identical legal interest" in the furtherance of a joint defense effort.  But reducing such an agreement to writing is unnecessary, and the Court finds that the parties had the requisite agreement—that they made "some showing that [they], indeed, came to an agreement embodying a cooperative and

7

common enterprise towards an identical legal strategy." *Id.* (quotation omitted); *see*, e.g., PRIVLOG 93 (expressly marking the email as "privileged" in the subject line).

In light of the foregoing, the Court holds that Defendants' withheld emails are not discoverable as they are protected under New Mexico's attorney-client privilege rules, including the common interest doctrine.

The Court pauses to observe that Defendants represented at the April 26th hearing that it was not their common practice to enter into written common interest agreements. In other words, Defendants do not typically memorialize their pursuit of a joint defense effort with other defendants who share an identical legal interest. Although such a written agreement is not required and might not be commonplace, the Court is nevertheless of the opinion that—at least in this litigation—a written common interest agreement would have assisted this Court in resolving this dispute and doubtless would assist the parties with discovery going forward.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's request that the Court conclude that "no claim of privilege can be asserted for [the withheld] emails [identified in PRIVLOG 88–97, 104–134]," ECF 74 at 1–2, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants may refrain from disclosing the documents identified in their April 24, 2023, Joint Privilege Log [ECF 74 at 3–9] as PRIVLOG 88–97, 104–134—with the exception of the sixteen pages of non-privileged emails that Defendants already exchanged with Plaintiff's counsel.[7]

---

[7] As noted above, the Court assumes Plaintiff already has these sixteen pages of non-privileged emails that Defendants exchanged with Plaintiff's counsel—PRIVLOG documents 108 (bottom half) through 111, 113–16, 119–22, 123 (bottom half) through 125, and 127 (bottom half) through 129. But should Plaintiff wish to (again) receive these emails, the privilege rules do not protect these emails from disclosure.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE