UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

AERO TECH, INC.,

      Plaintiff,

v.                                                                     Civ. No. 22-476 WJ/GJF

GREAT AMERICAN INSURANCE
COMPANY and GEORGE'S AIRCRAFT
REPAIR,

      Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR ORAL DEPOSITIONS

THIS MATTER is before the Court on Plaintiff's "Motion for the Deposition of the Department of the Interior to Proceed By Oral Examination Pursuant to F.R.C.P. 30" [ECF 78] ("Motion"). The Motion is fully briefed. *See* ECFs 95 (Resp.), 96 (Reply). On July 6, 2023, the Court held a hearing on the Motion. *See* ECFs 98 (minutes), 99 (transcript). The Motion requests that the Court compel two non-party United States Department of the Interior (DOI) employees to be deposed by oral examination (or to at least do more than answer the twenty-five written questions that the DOI has authorized them to answer). Mot. at 1–12. As explained below, the Court concludes that it lacks authority under current Tenth Circuit law to grant such a request. Consequently, the Court will **DENY** the Motion.

I.     BACKGROUND

Plaintiff is an aviation company in Clovis, New Mexico, and provides the DOI—Plaintiff's "main customer"—with aircraft for "aerial firefighting services." *Id.* at 3–4. Plaintiff's suit alleges Defendants caused Plaintiff "substantial losses" by preventing it from providing the DOI with a specific aircraft that Defendants had agreed to reassemble. *See* Compl.

[ECF 1] at ¶¶ 10–63.  In the instant Motion, Plaintiff "seeks evidence from the DOI to support [Plaintiff's] loss of use damages."  Mot. at 4.

On April 5, 2023, Plaintiff served subpoenas on the DOI.  *See* ECF 78-7 at ¶ 2.  One requested that DOI designate a representative to "testify at a deposition" on four topics, including "[t]he demand for aircraft for the 2022 fire season (February to June of 2022) and for the portion of the 2023 fire season that has already occurred."  ECF 78-5.  On April 7, 2023, Plaintiff sent the DOI a "*Touhy* Request" letter, further describing what Plaintiff was seeking through these subpoenas.  ECF 78-7.  For example, the letter suggested a specific DOI employee who might be able to provide "all the testimony that [Plaintiff] needs" and asserted that Plaintiff's request satisfied the appropriate regulations.  *Id.* at ¶¶ 7–8 (citing, *inter alia*, 43 C.F.R. § 2.288).

Despite its "general policy not to allow its employees to testify or to produce [government] records either upon request or by subpoena," 43 C.F.R. § 2.281(a), the DOI "provided each and every document requested by [Plaintiff] and [even] offered [two of] its employees" for depositions.  Resp. at 9; ECF 78-4 at 3.  Furthermore, although the DOI viewed "nearly none of the criteria in [43 C.F.R. § 2.288] [as] weigh[ing] in favor of granting the *Touhy* request," the DOI nevertheless granted the request—but with two limitations.  Resp. at 9; ECF 78-4 at 2–3.  Specifically, the DOI limited the depositions of its two employees to "written questions" of "no more than twenty-five."  *Id.* at 3.  Plaintiff, however, believes it is "entitled to oral depositions" and has now requested that the Court undo (or at least modify) these limitations.  Mot. at 1–12; Reply at 5.

## II. PARTIES' PRIMARY ARGUMENTS

Plaintiff insists that "it is not practical to depose two witnesses with just 25 written questions" and notes that "[d]epositions by written questions . . . are rarely, if ever, used in modern litigation under any circumstances." Mot. at 7–10 (quotation omitted). Consequently, Plaintiff requests that—in light of its subpoena and *Touhy* request—the Court compel the oral deposition of these two DOI employees. Mot. at 1–12. "If the Court is not inclined to grant [that request]," Plaintiff alternatively requests that the Court modify the DOI's current limitations on the written depositions (e.g., by allowing more written questions or multiple rounds of written questions). *Id.* at 11.

In support of this request, Plaintiff primarily argues that "the government has waived immunity for the enforcement of subpoenas" and that the Court should, pursuant to Rule 45 of the Federal Rules of Civil Procedure, "enforce a subpoena against a [non-party] federal agency" in a civil suit—particularly in light of *Trump v. Vance*, 140 S. Ct. 2412, 2431 (2020). Reply at 2–8.[1] Plaintiff alternatively contends that, even under the Administrative Procedures Act's, 5 U.S.C. § 500 *et seq.*, ("APA's") heightened "arbitrary and capricious" standard of review, it is still "entitled to [have the Court order] the oral depositions" of these non-party federal employees. *Id.* at 9–12 (quotation omitted).

For its part, the DOI maintains that "[t]he United States has not waived sovereign immunity for enforcement of a subpoena" and that Plaintiff is thus precluded from "forc[ing] a non-party federal governmental employee to participate in this private litigation." Resp. at 2–8.

---

[1] *But cf. Trump*, 140 S. Ct. at 2431 (merely "reaffirm[ing] th[e] principle" that "no citizen, not even the President, is categorically above the common duty to produce evidence when called upon in a *criminal* proceeding"—a principle established over "[t]wo hundred years ago [by Chief Justice John Marshall]"—and thus "hold[ing] that the President is neither absolutely immune from state criminal subpoenas seeking his private papers nor entitled to a heightened standard of need" (emphasis added)). Plaintiff also cites other cases, including those from other circuits and an "outlier" case from the District of Colorado, in support of its position. *See* Mot. at 2–8; *see also* Section III(B) and IV *infra* (addressing such cases in light of how (1) the Tenth Circuit appears to approach this issue and (2) most district courts within the Tenth Circuit approach the issue).

Accordingly, the DOI asserts that Plaintiff's only option for compelling these depositions is to "file an independent action seeking review of the agency's *Touhy* decision pursuant to the [APA]." *Id.* at 4, 8.[2]  And "[s]hould the Court undertake any such administrative review, it would find DOI's *Touhy* decision was not arbitrary, capricious, or contrary to law." *Id.* at 4, 8–10.

## III.  APPLICABLE LEGAL STANDARDS

"[T]he subpoena is in a sense the command of the attorney who completes the [subpoena] form" issued "by the clerk of any federal court." Advisory Committee Notes to Fed. R. Civ. P. 45(a) (1991 amend.); *see, e.g.*, Form AO 88A – Subpoena to Testify at a Deposition in a Civil Action (Dec. 2020), www.uscourts.gov/services-forms/forms.  "[D]efiance of a subpoena," however, is "an act in defiance of a court order and exposes the defiant witness to contempt sanctions."  Advisory Committee's Notes to Rule 45(a) (1991 amend.); *see* Fed. R. Civ. P. 45(g) (providing that the district court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it").

The Tenth Circuit "review[s] the district court's rulings on subpoenas for an abuse of discretion." *EEOC v. Dillon Cos.*, 310 F.3d 1271, 1274 (10th Cir. 2002) (quotation omitted).  "A district court abuses its discretion when it bases a decision on either a clearly erroneous finding of fact or an erroneous conclusion of law, or when its ruling manifests a clear error of judgment." *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009).

### A.  Subpoenas to Non-Party Federal Employees

Discovery from a non-party is generally governed by the subpoena standards set forth in Rule 45.  *See, e.g.*, Fed. R. Civ. P. 45(a), (d); *Rhea v. Apache Corp.*, 833 Fed. Appx. 186, 190

---

[2] The DOI acknowledged at oral argument that this District would be the proper venue for such an APA action. Tr. [ECF 99] at 36:21–37:3.

4

(10th Cir. 2020) (unpublished). "While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated." *Taylor v. Grisham*, Civ. No. 20-267 JB/JHR, 2020 WL 6449159, 2020 U.S. Dist. LEXIS 205965, at *2 (D.N.M. Nov. 3, 2020) (unpublished) (quotation omitted). Thus, "[i]t is generally recognized that a non-party involuntarily embroiled in civil litigation should not be subjected to undue burden or significant expense merely by virtue of having received a subpoena." *Id.* (quotation omitted); *accord* Fed. R. Civ. P. 45(d).

In addressing subpoenas served on non-party federal employees, the Supreme Court upheld "the right of a subordinate [non-party federal employee] to refuse to obey a subpoena duces tecum ordering production of [government documents] in his possession" when "[t]he refusal was based upon [an applicable federal] regulation." *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 463 (1951); *see Bonnet v. Harvest (US) Holdings, Inc.*, 741 F.3d 1155, 1159 (10th Cir. 2014) (observing that *Touhy* also "uph[eld] [the] regulation prohibiting federal agency employees from releasing documents without consent of the agency head" (citing *Touhy*, 340 U.S. at 467–68)).[3] In other words, "[a] subordinate federal employee acting pursuant to agency direction cannot be required to release information absent authorization by his superior." *In re Gray*, 162 F.3d 1172 (Table), 1998 U.S. App. LEXIS 25779 (full-text format), at *3 (10th Cir. 1998) (unpublished) (citing *Touhy*, 340 U.S. at 467–70)).[4]

---

[3] *See also* 5 U.S.C. § 301 (authorizing heads of executive departments to prescribe *Touhy* regulations); *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006) (describing *Touhy* regulations as establishing "method[] by which . . . an agency would respond to a subpoena").

[4] *See also U.S. Steel Corp. v. Mattingly*, 663 F.2d 68, 68 (10th Cir. 1980) (holding that "the District Court erred in enforcing the subpoena [of a private company against a non-party federal employee]" because such an issue was "controlled by [*Touhy*] and *Saunders v. The Great Western Sugar Company*, 396 F.2d 794, (10th Cir. 1968)"); *Saunders*, 396 F.2d at 794–95 (concluding that "[the] order of the district court . . . [must be] set aside and held for

**B. Subpoenas to Non-Party Federal Agencies**

Although *Touhy* addressed "whether *lower federal officials* could be held in contempt for refusing to comply with a subpoena when agency regulations prohibited them from disclosing relevant documents," it did not address whether "*federal agency heads* [could] withhold evidence sought under a valid federal court subpoena." *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 776–77 (9th Cir. 1994) (emphasis added).[5] Thus, *Touhy* did not address the more fundamental question of whether "federal sovereign immunity . . . cover[s] non-party subpoenas served on federal officers and agencies." *Bonnet*, 741 F.3d at 1161 (citing *Alltel Commc's, LLC v. DeJordy*, 675 F.3d 1100, 1103 (8th Cir. 2012)).

1. Approach of Other Circuits

In addressing this question, the Second, Fourth, and Eighth Circuits have "[c]onclud[ed] that a third-party subpoena is a 'suit' triggering the federal government's sovereign immunity." *Alltel*, 675 F.3d at 1103–04; *COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 277 (4th Cir. 1999) (same); *United States EPA v. General Electric Co.*, 197 F.3d 592, 597–98 (2d Cir. 1999) (same).[6] The Ninth and D.C. Circuits, however, "adhere[ ] to the view 'that sovereign

---

naught" because (1) that order "compel[led] [non-party federal employees] to respond to subpoenas duces tecum issued by that court" and (2) "[the Tenth Circuit was] bound by *Touhy*").

[5] *Accord Touhy*, 340 U.S. at 472 (finding it "unnecessary . . . to consider the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession").

[6] Such immunity, however, "does not give the Executive Branch a 'blank check' to ignore third-party subpoenas because the agency response may be judicially reviewed under the Administrative Procedure Act, 5 U.S.C. § 702." *Alltel*, 675 F.3d at 1104; *General Electric*, 197 F.3d at 598–99 (same); *COMSAT*, 190 F.3d at 277 (same and observing that "[t]he APA waives the government's sovereign immunity from suit and permits federal court review of final agency actions, when . . . plaintiff has stated a claim 'that an agency or an officer or employee thereof acted or failed to act in an official capacity'" and that "[a] reviewing court may set aside a final agency action when the action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" (quoting 5 U.S.C. § 702) (citing § 706)); *compare Cabral v. United States DOJ*, 587 F.3d 13, 19 (1st Cir. 2009) (upholding the district court's decision to (1) "decline[ ] to hear a motion . . . to compel [a non-party federal government official's] compliance with [a party's] *Touhy* requests" and (2) require "a separate action under the APA"), *with General Electric*, 197 F.3d at 599 (concluding that "the APA allows the enforcement of a non-party subpoena duces tecum for discovery against the government through a motion to compel compliance").

immunity is not a defense to a third-party subpoena' of a federal agency," *Alltel*, 675 F.3d at 1103 (quoting *Linder v. Calero-Portocarrero*, 251 F.3d 178, 181 (D.C. Cir. 2001)), and that Rule 45 thus "supplies the standards under which district courts assess agency objections to a subpoena." *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007); *Exxon*, 34 F.3d at 778–80.

### 2. Likely Tenth Circuit Approach

Although it has not explicitly articulated its approach, the Tenth Circuit appears to have adopted the Eighth Circuit's view that "a third-party subpoena is a 'suit' triggering the federal government's sovereign immunity." *Alltel*, 675 F.3d at 1103–04. For instance, in *Bonnett*, the Tenth Circuit observed that "[t]he Supreme Court [in *Touhy*] ha[d] avoided deciding whether a subpoena is a 'suit' against a sovereign." *Bonnet*, 741 F.3d at 1159. The court then reiterated its previous holding that "the term 'suit' embodies the *broad principle* that the government is not subject to legal proceedings, at law or in equity or *judicial process* without its consent"—an interpretation that "comports with the core notion of sovereign immunity that in the absence of governmental consent, the courts lack jurisdiction to restrain the government from acting, or to compel it to act." *Id.* (first emphasis added) (quoting *United States v. Murdock Mach. & Eng'g Co.*, 81 F.3d 922, 931 (10th Cir. 1996)). The Tenth Circuit further observed that "[t]he issuance of a subpoena initiates an adversary process that can command the production of documents and things *only after judicial process is afforded*." *Id.* (emphasis in original) (quoting *Becker v. Kroll*, 494 F.3d 904, 922 (10th Cir. 2007)).

In light of these principles, the Tenth Circuit concluded that "[a] 'suit' includes 'judicial process' . . . and a subpoena duces tecum is a form of judicial process." *Id.* (citing *Murdock*, 81 F.3d at 931; *Becker*, 494 F.3d at 922). Consequently, it held that "a subpoena duces tecum

---

(but also holding that "the APA allows the enforcement of a non-party subpoena duces tecum for discovery against the government through a motion to compel compliance")

served directly on a tribe is a 'suit' triggering tribal sovereign immunity." *Id.* And although it ultimately resolved a question of *tribal* immunity, the Tenth Circuit expressly endorsed the Eighth Circuit's decision to "construe *federal* sovereign immunity as covering non-party subpoenas served on *federal officers and agencies*." *Id.* at 1161–62 (emphasis added) (citing *Alltel*, 675 F.3d at 1103).

### 3. Approach of District Courts Within the Tenth Circuit

One "outlier" case from the District of Colorado has held that "[w]hen a litigant seeks to obtain documents from a non-party federal governmental," the federal government has "waived its sovereign immunity"—and that a federal court may thus "enforce its own subpoena." *Ceroni v. 4Front Engineered Sols., Inc.*, 793 F. Supp. 2d 1268, 1275 (D. Colo. 2011) (quotation omitted) (citing, *inter alia*, *Watts*, 482 F.3d at 508); *see also Armstrong v. Arcanum Grp., Inc.*, 250 F. Supp. 3d 802, 805 (D. Colo. 2017) (describing the *Ceroni* holding as "tak[ing] a contrary position to the Tenth Circuit"—and as "an outlier compared to the rest of the cases in [the District of Colorado], which are in accord with the Tenth Circuit's reasoning in *Gray*"). Most district courts within the Tenth Circuit, however, have concluded that "a party seeking [discovery] from a nonparty federal employee or agency" cannot compel such discovery through a Rule 45 subpoena—but rather must "fil[e] 'an action in federal court pursuant to the Administrative Procedure Act.'" *Armstrong*, 250 F. Supp. 3d at 805–06 (quoting *Gray*, 1998 U.S. App. LEXIS 25779, at *4).[7]

---

[7] *See also Am. W. Bank Members, L.C. v. Utah*, Civ. No. 2:16-326 CW/DAO, 2021 WL 5384840, 2021 U.S. Dist. LEXIS 224156, at *11 (D. Utah Nov. 18, 2021) (concluding that "if [plaintiff] wishes to dispute the [government's] *Touhy* disclosure decisions, it must do so in an APA proceeding" because the court "lack[ed] jurisdiction to compel compliance with . . . the subpoena or the *Touhy* requests" (citing *Saunders*, 396 F.2d at 795; *Mattingly*, 663 F.2d at 68; *Armstrong*, 250 F. Supp. 3d at 806)); *Quezada v. Mink*, No. 10-cv-00879-REB-KLM, 2010 WL 4537086, 2010 U.S. Dist. LEXIS 121777, at 14–15 (D. Colo. Nov. 3, 2010) (concluding that "*Touhy* prohibits enforcement of the subpoena"—and that "[a]lthough both efficiency and economy are compromised by the requirement of a separate claim brought pursuant to the Administrative Procedure Act, that is what the law of this Circuit requires"); *Colorado v. Rodarte*, No. 09-cv-02912-PAB-MEH, 2010 WL 924099, 2010 U.S. Dist. LEXIS 36473, at *8 n.3 (D. Colo. Mar.

## IV. DISCUSSION

The United States is not an ordinary non-party for Rule 45 subpoena purposes. For 72 years, the USA has enjoyed special solicitude when it comes to being compelled to provide evidence in civil litigation to which it is not a party. *Touhy*, 340 U.S. at 463–68. The question today concerns the proper procedural path a litigant must follow when it objects to the outcome of a government agency's *Touhy* review. In addressing this question, the Court concludes that it lacks the authority to compel the DOI to do more than it has already agreed to do. If Plaintiff wants more than that, it must file a separate APA action to challenge the DOI's decision.

### A. The Court Cannot Directly Compel DOI Employees to be Deposed

The Court begins by observing that Plaintiff's Rule 45 subpoena is on the DOI itself for a Rule 30(b)(6) oral deposition. *See* ECF 78-5; Fed. R. Civ. P. 30(b)(6) (providing for oral depositions of "an organization," through "designated" representative(s)). Although "Plaintiff attempted to serve [a Rule 45 subpoena on a specific DOI employee] in Idaho" for a Rule 30(b)(1) oral deposition, the employee "was told by [the DOI] not to accept service." Mot. at 5 n.1; *see* Fed. R. Civ. P. 30(b)(1) (providing for oral depositions of individuals). As noted, the Tenth Circuit expressly prohibits the enforcement of a subpoena against such non-party "federal agency employees . . . without consent of the agency head." *Bonnet*, 741 F.3d at 1159; *Touhy*, 340 U.S. at 463–68; *Mattingly*, 663 F.2d at 68; *Saunders*, 396 F.2d at 794–95; *Gray*, 1998 U.S. App. LEXIS 25779, at *3–4. Thus, even if Plaintiff had successfully served its subpoena on this DOI employee, the Court could not have enforced it.

---

9, 2010) (explaining that "[t]he appropriate means for challenging [a federal agency's] decision under *Touhy* is an action under the Administrative Procedure Act in federal court" (quotation omitted)).

### B. The Court Cannot Compel DOI to Require Its Employees to Be Deposed

Regarding the Rule 45 subpoena on the DOI as an agency, the Tenth Circuit has never held that—although courts cannot enforce subpoenas on non-party federal employees—courts may nevertheless enforce subpoenas on non-party federal *agencies*. *See supra* Section III(B). For instance, the Tenth Circuit has never expressly permitted a party to effectively circumvent *Touhy*'s prohibition on subpoenaing non-party federal employees—by essentially changing a Rule 45 subpoena for a Rule 30(b)(1) *individual* deposition to a Rule 45 subpoena for a Rule 30(b)(6) *organization* deposition. *See id.* Indeed, in addressing *Touhy* issues, the Tenth Circuit has not articulated *any* meaningful distinction between subpoenas for Rule 30(b)(1) depositions and subpoenas for Rule 30(b)(6) depositions—particularly when those subpoenas, as a practical matter, essentially seek the same thing (e.g., deposition testimony of non-party federal employees). *See, e.g.*, *Bonnet*, 741 F.3d at 1159; *Touhy*, 340 U.S. at 463–68; *Mattingly*, 663 F.2d at 68; *Saunders*, 396 F.2d at 794–95; *Gray*, 1998 U.S. App. LEXIS 25779, at *3–4.

Furthermore, the Tenth Circuit has all but held that it "construe[s] federal sovereign immunity as covering non-party subpoenas served on federal officers and agencies." *See Bonnet*, 741 F.3d at 1159–62 (emphasis added) (citing *Alltel*, 675 F.3d at 1103). But even if sovereign immunity did not preclude the enforcement of such subpoenas, the Tenth Circuit's application of *Touhy* still precludes the enforcement of such subpoenas. *See, e.g.*, *Mattingly*, 663 F.2d at 68; *Saunders*, 396 F.2d at 794–95; *Gray*, 1998 U.S. App. LEXIS 25779, at *3–4; *see also Armstrong*, 250 F. Supp. 3d at 804–04 (declining to reach the "alternative basis for quashing the subpoena on sovereign immunity grounds" because, under the Tenth Circuit's "expansive reading of *Touhy*," the court simply "cannot compel [a non-party federal employee] to obey [a] subpoena[ ] contrary to [the federal agency's] instructions under its valid *Touhy* agency

regulations"). Lastly, as illustrated above, most district courts within the Tenth Circuit view its approach to *Touhy* as precluding the enforcement of a subpoena on "a nonparty federal *employee or agency*." *Armstrong*, 250 F. Supp. 3d at 805–06 (emphasis added); *see supra* Section III(B)(3). Consequently, the Court holds that it lacks the authority to enforce Plaintiff's Rule 45 subpoena for Rule 30(b)(6) depositions on non-party DOI .

1. Plaintiff's Authority Is Unpersuasive

Plaintiff has urged the Court to rely on cases such as *Ceroni*, *Watts*, and *Trump* to chisel a new enforcement angle on the *Touhy* doctrine. *See* Mot. at 2–9. The Court, however, is unpersuaded by Plaintiff's reliance on such cases. Although the Court considers the D.C. Circuit's 2007 *Watts* decision to be well-reasoned, *see* 482 F.3d at 507–08; Tr. at 33:13–21 (conceding that *Watts* "probably has the most persuasive reasoning" for those cases that are inconsistent with the Tenth Circuit's approach), the Tenth Circuit has not indicated its adoption of the methodology prescribed there or that Plaintiff suggests here. And the Tenth Circuit has had sixteen years to do so since *Watts* was decided. Thus, absent something stronger than a Colorado magistrate judge's single published decision in *Ceroni*, 793 F. Supp. 2d at 1277–78, from twelve years ago that has since been roundly criticized by his colleagues, this Court is reluctant to conclude that *Sanders* and *Mattingly* are no longer controlling. After all, the Tenth Circuit itself has not brooked any doubt about its earlier decisions.

The Court must also part ways with Plaintiff's ambitious argument that *Trump v. Vance*, 140 S. Ct. 2412, applies in the *Touhy* context. First, *Trump* arose in the context of a criminal grand jury investigation where it is well-settled that the grand jury is entitled to "every man's evidence." *Trump*, 140 S. Ct. at 2420; *see also id.* at 2431 ("reaffirm[ing] th[e] principle" that "no citizen, not even the President, is categorically above the common duty to produce evidence

11

when called upon in a criminal proceeding"). Second, in the three years since *Trump* was decided, *no* court has applied the decision to a *Touhy* dispute in private civil litigation. And the Court has received no information from the parties either in briefing or at the hearing that any executive agency has modified its *Touhy* regulations due to the *Trump* decision. *See, e.g.,* Tr. at 12:11–13:15 (Plaintiff conceding that it found no cases applying *Trump* in the *Touhy* context). Indeed, if taken to its logical limit, Plaintiff's construction of *Trump* would render irrelevant most of the 72 years of *Touhy* jurisprudence. That the Supreme Court likely would not take such a drastic step without at least mentioning the *Touhy* decision in *Trump* seems obvious. Accordingly, absent an unmistakable indication from some federal court somewhere that the holding of *Trump* now extends to the *Touhy* context, this Court considers itself well-advised not to be the first.

### 2. Additional Observations

The Court observes that Plaintiff's subpoena request for remote oral depositions of no more than three hours of testimony for each deponent seems neither unreasonable nor disproportionate. *See* Tr. at 8:25–9:3 (Plaintiff representing that the two depositions could be completed "probably within a day," lasting "maybe three hours per witness").[8] Because the Court lacks the authority to enforce Plaintiff's Rule 45 subpoena in the first place, however, the Court does not address whether it would have otherwise enforced the subpoena by compelling such depositions.

---

[8] For instance, the target testimony is clearly relevant, as it goes directly to Plaintiff's damages claim. Furthermore, the DOI's only evidence regarding its asserted "undue burden" is DOI Assistant Director Grant Beebe's letter, which does not explain in any detail the burden on the deponents or his agency. *See* ECF 78-4 (letter); Tr. at 38:22–40:5 (discussing this letter as the only evidence before the Court regarding such a burden).

The Court regrets that the three parties in this litigation did not collaborate on a single unified *Touhy* request.[9] Had the parties worked together in this fashion, the DOI could have dealt with all of their requests at once. Having to respond piecemeal imposes an administrative (and potentially litigative) burden on the DOI that could have been minimized. The prospect of Plaintiff deposing DOI's witnesses and then Defendants asking for the same relief months down the road is not a preferred sequence.

## V. CONCLUSION

The Court concludes that it does not have the authority to conduct an ad hoc "arbitrary and capricious" APA review of the DOI's response to Plaintiff's *Touhy* request. Plaintiff must therefore file a separate case under the APA.

As discussed above, under controlling Tenth Circuit law, the Court does not have the authority under Rule 45 to review the *Touhy* decision in dispute here. *See Touhy*, 340 U.S. at 463–68; *Mattingly*, 663 F.2d at 68; *Saunders*, 396 F.2d at 794–95; *Gray*, 1998 U.S. App. LEXIS 25779, at *3–4. Despite the efficiency that doing so would yield, the Court also concludes that it does not have the authority to conduct an APA-style review within the context of this case. *See, e.g.*, *Armstrong*, 250 F. Supp. 3d at 805–06 (concluding that that "a party seeking [discovery] from a nonparty federal employee or agency" must "fil[e] 'an action in federal court pursuant to the Administrative Procedure Act'" (quoting *Gray*, 1998 U.S. App. LEXIS 25779, at *4)); *supra* note 7 (summarizing additional cases from district courts within the Tenth Circuit that also reach this conclusion). No matter how cumbersome it may be, the process that Plaintiff must follow to grieve DOI Assistant Director Beebe's decision is to file a *separate* action under the APA. Per

---

[9] Defendants submitted a joint *Touhy* request to DOI on April 28, 2023, one day after Plaintiff submitted his request. *See* Resp. at 3 n.1; *see also* ECF 71 at 1 n.2 (the Court advising the parties during its April 17, 2023, telephonic status conference that "it would likely be most efficient if the parties had a united approach when requesting information from the DOI"). DOI's counsel suggested at the hearing that the Defendants' *Touhy* requests—which are not before the Court—present an additional level of complexity. *See* Tr. at 45:25–46:17.

the DOI's acknowledgment at oral argument, however, that action should be filed in the District of New Mexico.  *See* Tr. at 36:21–37:3.  The Court expects that any such new action would promptly be reassigned to WJ/GJF, given that action's relation to the instant case.

Because it does not have before it the full administrative record, the Court will not decide whether, under the APA, it would find Beebe's decision to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The Court does note, however, that Beebe's choice to limit the depositions of the two DOI employees to "written questions" of "no more than twenty-five" does not necessarily seem to have a regulatory basis.  Instead, such limitations appear to be made up—albeit with the understandable motivation to limit the distraction posed by this otherwise private litigation on the day-to-day affairs of a government agency.  *See also* Tr. at 40:2–5 (DOI representing that there was no "particular magic to twenty-five questions as compared to let's say thirty-five").  Nevertheless, the Court must abstain from deciding whether the DOI complied with the APA until that issue is properly before it.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion [ECF 78] is **DENIED**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE